NICHOLAS J. DECOULOS, trustee, & others *vs*. CITY OF
PEABODY & another.

Essex.    October 8, 1971. — November 8, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

*Zoning*, Sewage disposal. *Public Health*.

State public health statutes, including G. L. c. 83, § 11, and c. 111, §
127A, and the State Sanitary Code, do not preclude a city from
including appropriate and more stringent health protection mea-
sures in a zoning ordinance adopted pursuant to G. L. c. 40A. |429|
Zoning powers granted by G. L. c. 40A, §§ 2, 3, to cities and towns are
not be narrowly construed. |429–430|
A provision of a city's zoning ordinance which permitted certain
commercial usage of a parcel of land only where "the sewage
disposal for said . . . |parcel| is connected to the municipal sanitary
sewer system" was valid under G. L. c. 40A, §§ 2, 3. |430–431|

BILL IN EQUITY filed in the Superior Court on January
9, 1970.

The suit was heard by *Lappin*, J.

*Nicholas J. Decoulos*, trustee, pro se.

*Leonard F. Conway, Jr.*, Assistant City Solicitor, for the
City of Peabody & another, submitted a brief.

CUTTER, J.    The plaintiff, owner of about 14.44 acres of
land (the locus) on Route 114, seeks declaratory relief
against the city and its building inspector concerning the
validity of §§ 7–A–1 and 7–A–2 of the city's amended
zoning ordinance as applied to the locus. The final decree
declared (a) § 7–A–2 to be invalid[1] and (b) § 7–A–1 to be

---

[1] There is no argument or appeal concerning this part of the decree. Thus
we need not, and do not, consider whether *Enos* v. *Brockton*, 354 Mass. 278,
precludes a city or town from requiring by its zoning law that all structures
in a particular zone have an outer wall of generally consistent external ap-
pearance and of fireproof or fire-resistant materials. We note merely that
§ 7–A–2 did not as directly concern the details of all aspects of construction
as did the provision considered in the *Enos* case, which incorporated by
reference a provision of the building code.

valid. The plaintiff appealed. The case is before us on the pleadings and a report of material facts.

Section 7–A–1 of the zoning ordinance, contained in a 1969 amendment of the ordinance, permits certain specified commercial uses on the locus (and certain other land nearby), "provided, however, that no such use . . . be permitted unless the sewage disposal for said lot is connected to the municipal sanitary sewer system." The locus is not at present directly served by the municipal sewer system and an extension will be required before the locus can be connected to the system. The plaintiff, relying on *Enos* v. *Brockton*, 354 Mass. 278, 280–282, contends that the zoning enabling act (G. L. c. 40A) does not permit the city, by a zoning ordinance, to require the connection of the locus with the city's sewer system, and asserts that such matters may be dealt with only under G. L. c. 111, § 127A (inserted by St. 1965, c. 898, § 3) and the State Sanitary Code (1966 ed.). See especially §§ 2.9–6.9, promulgated thereunder. See also G. L. c. 83, §§ 3 and 11.

We assume (without deciding) that the city could not in its zoning ordinance require the making of sewer connections on a basis which in any degree relaxes any standards laid down in the statutes just cited or in the State Sanitary Code (see *Commonwealth* v. *Hadley*, 351 Mass. 439, 440, judgment vacated, 388 U. S. 464). We think, however, that the powers granted by c. 83, § 11; c. 111, § 127A; the State Sanitary Code; and related health statutes indicate no legislative intention to preclude a city from including appropriate, more specific and stringent health protection measures in a zoning ordinance adopted pursuant to G. L. c. 40A. The contested provision of the Peabody ordinance (§ 7–A–1) seems to us designed to regulate for reasons of public health and welfare the type, use, and quality of structures in a particular zone or use district.

The extensive powers, granted by G. L. c. 40A to cities and towns, are not to be narrowly interpreted. General Laws c. 40A, § 2 (as amended through St. 1959, c. 607, § 1),

provides (emphasis supplied) that, for "the purpose of promoting the *health* . . . or *welfare* of its inhabitants, any city . . . may by a zoning ordinance . . . regulate . . . the location and *use* of buildings, structures and land for trade . . . or other purposes" subject to a proviso not here pertinent. The provision of a sewer connection obviously has a direct relation to the use of a commercial building and to the possible effects of that use upon other buildings in the same zoning district. Section 3 (inserted by St. 1954, c. 368, § 2) provides (emphasis supplied) that "[z]oning regulations . . . shall be designed among other purposes . . . to *conserve health;* to secure safety from fire . . . and other dangers . . . to facilitate the adequate provision of . . . water, *sewerage* . . . and other public requirements; to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city . . . and *to preserve and increase its amenities.*" Requiring a sewer connection in a commercial area, with its intensive use, plainly facilitates the "adequate provision of . . . sewerage" and tends to increase the "amenities" of that zone.

One test of the substantive validity of an amendment of a zoning ordinance or by-law is "whether there has been shown any substantial relation between the amendment and the furtherance of any of the general objects of the enabling act." See *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228–229. Cf. *Beal* v. *Building Commr. of Springfield,* 353 Mass. 640, 643. Judged by this test, the requirement in § 7–A–1 of the Peabody ordinance (that commercial buildings be "connected to the municipal sanitary sewer system") cannot be said to be an unsuitable method of protecting the health of the general community and accomplishing the statutory zoning objectives.

Although septic tanks may be a feasible method of waste disposal in a sparsely settled rural area, a city may reasonably conclude that such tanks are wholly inadequate to meet sewerage needs of a crowded commercial area. The

judge found that the locus "is criss-crossed by two or three brooks . . . and is low swamp and poor in character." There is reference in his findings to other land nearby with "a considerable drop-off . . . which runs down into a river and marsh area." For the city by its zoning ordinance to require such an area to be connected with its sewer system is a wholly natural health precaution.

*Enos* v. *Brockton*, 354 Mass. 278, dealt with a zoning ordinance which required that all "multiple dwellings shall be of second class construction." See 1968 Ann. Surv. Mass. Law, § 12.4. The term "second class construction" was not defined in the Brockton zoning ordinance but was defined in its building code. The term usually covers a wide range of precisely specified structural standards and requirements. Because such standards are ordinarily (and more appropriately) dealt with in building codes, the court concluded that the Brockton provision was of a type not authorized by G. L. c. 40A for inclusion in a zoning ordinance. In that case, however, time was afforded to the city (p. 282) to insert the provision by amendment in its building code. We need not now speculate whether if some special reason for imposing the requirement in a particular zoning use district had been shown, the result of the *Enos* case would have been different. We regard the *Enos* case as limited in application to provisions uniquely appropriate to building codes. We see no reason (merely because sewer arrangements could have been regulated under other authority granted to towns and cities by the General Laws) for extending the principle of the *Enos* decision to limit the scope of zoning ordinances reasonably promoting proper sewer and health arrangements, either generally or in particular zones, in furtherance of objectives stated in c. 40A, §§ 2 and 3. See Anderson, Am. Law of Zoning, § 7.06. Cf. Rathkopf, Zoning and Planning, c. 1, §§ 2–3.

*Decree affirmed.*